Filed 3/5/14  In re April M. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re APRIL M., a Person Coming Under the Juvenile Court Law. | B250425 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MARIA B.-M.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK98398) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert S. Draper, Judge.  Reversed.

        California Appellate Project, Jonathan B. Steiner and Anne E. Fragasso for Defendant and Appellant.

        John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

Maria B.-M. (Mother) challenges the jurisdictional order declaring her 16-year-old daughter, April, a dependent child of the court under Welfare and Institutions Code section 300, subdivision (b).[1] We conclude that the order is not supported by substantial evidence as to Mother.[2]

## FACTS AND PROCEEDINGS BELOW

The combat between April and her parents that led to the jurisdictional finding in this case dates back to at least April 2011, when April locked her younger brother, Daniel, in the laundry room of their home and would not let him out. Daniel smashed a window to escape and his brother was cut by the glass. After Daniel broke out of the laundry room, he and April went to the home of their maternal grandmother. When their parents arrived to bring them home, April resisted. She and her father, Juan M. (Father) fought and April sustained a black eye and other injuries to her face. The family was referred to the Department of Children and Family Services (DCFS) which closed the case after the parents participated in parenting classes and April received behavior therapy once a week at school.

After the laundry room incident April's behavior grew worse. She was frequently truant from school and her grades were D's and F's. She yelled, talked back and cursed her parents on a regular basis. Whenever Mother attempted to talk to April about her behavior April would call Mother a "bitch" and say "fuck you." According to Mother, April "does as she pleases and comes and goes when she wants." In January 2013, Mother returned home early from work and found April there with three young males during school hours. When April and the men tried to leave, Mother blocked the door.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Mother purports to appeal from the court's "jurisdictional findings." A dependency court's jurisdictional findings are not appealable. They can be challenged, however, by way of an appeal from the dispositional order that followed them. (*Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1754.) We will treat Mother's appeal as from the dispositional order.

2

April began yelling at Mother, punched her in the face and bit her hand. Mother tried disciplining April by denying her privileges and taking away her cell phone but her behavior did not improve.

Matters came to a head in March 2013. April told a DCFS worker that when she arrived home one evening between 5:00 and 6:00 p.m. Father told her he did not want her in the home anymore and told her to leave. She spent the night at an aunt's home. When she returned home the next morning to prepare for school Mother "kicked her out" before she could finish getting ready. When she returned home that evening, sometime after 7:00 p.m., she went straight to her bedroom and sat on the bed. Father followed her, grabbed her hair in both his hands and pulled her to a standing position. They argued and Father slapped her face.

The following day a DCFS worker interviewed April at school. The worker observed a wound on April's head consisting of a swollen area with dried blood on it. April also had a circular bruise on the inner bicep of her left arm. April told the worker she was "not sure" how she sustained these injuries but denied they were inflicted by Father. The worker detained April and filed a petition under section 300, subdivisions (a) and (b) alleging that Father physically abused April, her parents excluded her from their home and failed to make an appropriate plan for her care and supervision, and that her parents were unable to provide her with appropriate care and supervision due to her behavior.[3] April was placed in shelter care.

At the detention hearing the court found that there was no reasonable means to protect April without removing her from her home. DCFS placed April in a foster home.

A DCFS worker interviewed April and her parents prior to the jurisdiction and disposition hearing. On the issue of whether April's parents "kicked her out" of the house, the parties gave conflicting versions of what happened.

---

[3]     The petition also alleged under section 300, subdivision (j) that the parents' conduct placed April's brothers at risk of harm. DCFS subsequently dismissed this allegation.

3

According to April, her parents told her "'get out of here' and 'I don't want you here.'" She spent the night at an aunt's home. When she returned the next morning to get ready for school, Mother said: "'What the fuck are you still doing here?'" When April replied she was getting ready for school, Mother said: "'Get the fuck out of my house. It's my house not yours[.]'" Nevertheless April returned home that evening and was allowed in. She and Father got into an argument that night and she suffered an injury that may have been intentionally inflicted by Father or may have had an accidental cause. In any case, April's parents did not again tell her to leave the house.

Mother told the worker, "We never kicked her out. . . . [W]e just wanted to scare her a little because nothing was working." Mother denied that Father excluded April from the home.

Father denied barring April from the family home. He admitted telling April that "if she didn't want to live with us anymore then she didn't have to" but this was a scare tactic, he explained. "[W]e didn't want to throw her out on the street. I didn't know what else to do, that was all that I could think of doing . . . to get her to listen to us."

DCFS reported that April's parents were cooperative, resourceful and participating in parenting classes. April's younger brothers, who remained in the family home, were reported to be doing well in school. April, on the other hand, was still getting D's and F's in her classes and ditching school. Her foster parent asked DCFS to place April somewhere else but no alternative placement was available.

At the jurisdiction and disposition hearing the court admitted DCFS reports containing the information summarized above. There was no live testimony. Counsel for April and the parents agreed that April wanted to return home and that the parents wanted her back. Counsel for DCFS took no position on whether April should return home.

The court sustained the petition as to Father under section 300, subdivisions (a) and (b) (physical abuse; child endangerment) and as to Mother under subdivision (b). It ordered that the family be provided with family maintenance services, that April and her parents attend conjoint counseling and that Mother and Father attend parenting

4

classes. The court also ordered April referred for "Wrap" services.[4] As to disposition, the court ordered April be placed in her parents' home.

Mother alone filed an appeal.[5]

## DISCUSSION

Section 300, subdivision (b) states in relevant part that a child comes within the jurisdiction of the juvenile court if: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of *the failure* or inability *of his or her parent or guardian to adequately supervise or protect the child*[.]" The subdivision further provides that "[t]he child shall continue to be a dependent child pursuant to this subdivision *only so long as is necessary to protect the child* from risk of suffering serious physical harm or illness." (Emphasis added.) The italicized phrases are at issue in this appeal.

A jurisdictional finding under section 300, subdivision (b) requires: (1) neglectful conduct by the parent in one of the forms specified in the subdivision; (2) causation; and (3) "serious physical harm or illness" to the child or a "substantial risk" of such harm or illness. (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1259.) Here, the court found that Mother failed to adequately supervise or protect April because she "excluded the child from the home [and] failed to make an appropriate plan for the child's care and supervision [which] . . . endanger[ed] the child's physical health and safety[.]"

There was conflicting evidence as to whether April was "kicked out" of her home or whether Mother merely threatened to do so as a "scare tactic." But even accepting

---

[4] "Wrap" services bring together in an interagency-coordinated fashion services for children that "wrap" around the child and focus on the family to support the child's strengths. (Preis, Advocacy for the Mental Health Needs of Children in California (1998) 31 Loyola L.A. L.Rev. 937, 938-939.)

[5] DCFS argues that because Father did not appeal we should dismiss Mother's appeal as "irrelevant" since April will remain a dependent child of the court regardless of the outcome of Mother's appeal. We reject that argument for the reasons we explained in *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716 and footnote 4. (See also *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.)

April's version of events, April's exclusion from her home lasted only one night—a night that she spent at the home of her aunt. She was admitted back into her home the next day and she lived there until DCFS removed her.

The evidence does not support jurisdiction based on section 300, subdivision (b). Even assuming that Mother excluded April from the family home as alleged, no evidence exists that she suffered any physical harm or illness, much less serious physical harm or illness, as a result of this single incident. Moreover, it was undisputed at the jurisdiction and disposition hearing that Mother and Father wanted April to return home and April wanted to return. Furthermore, Mother and Father were attending parenting classes and the evidence in the DCFS reports was uncontradicted that they loved April and cared about her physical safety, as shown by their reaction to April's conduct at school and at home. Thus at the time of the hearing there was not a substantial risk of April suffering future serious physical harm from being excluded from the family home. Subdivision (b) allows a child to remain a dependent child of the court "only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." Substantial evidence does not support the existence of such a risk.[6]

---

[6]   Nothing in this opinion should be interpreted to condone the exclusion of a child from the child's home without making alternative arrangements for the child's care and safety.

## DISPOSITION

The jurisdictional findings of the juvenile court as to Maria B.-M. are reversed and the court is ordered to dismiss the petition as to her unless new circumstances would justify a new finding of jurisdiction.

NOT TO BE PUBLISHED.


ROTHSCHILD, Acting P. J.

We concur:


CHANEY, J.                    MILLER, J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.